141 So.2d 411 (1961)
Mrs. Corine PRESLEY, Administratrix of the Succession of Barney W. Presley, Jr.,
v.
UPPER MISSISSIPPI TOWING CORPORATION.
No. 5436.
Court of Appeal of Louisiana, First Circuit.
November 13, 1961.
Rehearing Denied December 18, 1961.
On Second Rehearing May 16, 1962.
Certiorari Denied June 20, 1962.
*412 Breazeale, Sachse & Wilson, Maurice J. Wilson, Boris F. Navratil, Baton Rouge, for defendant-appellee and appellant.
Laycock & Stewart, Ashton Stewart, Baton Rouge, Lancaster & Baxter, Talluhah, for plaintiff-appellant and appellee.
Before LOTTINGER, LANDRY and REID, JJ.
LANDRY, Judge.
This is a suit under the Jones Act (46 U.S.C.A. § 688) by the mother of an unmarried man seeking to recover damages in the sum of $100,000 for the death of her seaman son drowned in the Mississippi River during the course of his employment on the tugboat "Harriet Ann", owned by defendant, Upper Mississippi Towing Corporation.
Trial of this cause before a jury in the Honorable Nineteenth Judicial District Court, East Baton Rouge Parish, resulted in a verdict and judgment predicated thereon in favor of plaintiff and against defendant in the sum of $12,000, from which verdict plaintiff has appealed alleging reversible error on the part of the trial court in (1) refusing to give certain specific charges requested by appellant, and (2) the giving of certain allegedly improper and inadequate charges to the jury, all of which is said to have been prejudicial to plaintiff's interest. Learned counsel for defendant suspensively appealed the adverse judgment but does not complain that defendant was improperly cast or that the award of damages *413 in the sum of $12,000 is excessive. On the contrary, in his brief before this court, defendant-appellant takes the position that the jury verdict and judgment thereon is correct and should be affirmed, the appeal herein taken by defendant having been entered solely for the purpose of preventing execution of plaintiff's judgment pending plaintiff's appeal which is and can be devolutive only.
The evidence in the case at bar shows that at the time of his death (and for a considerable period prior thereto) Barney W. Presley, Jr. (who was 27 years old and unmarried) was employed by defendant aboard the tug "Harriet Ann" at a take-home pay of approximately $350 per month. His alternate bi-weekly checks of $174 and $172, respectively, were sent by decedent to plaintiff, decedent's widowed mother, who endorsed and cashed them, employing approximately $250 from the proceeds thereof each month to defraying the expenses of operating a home, title to which was in decedent and in which plaintiff resided with four of her other children, namely, Franklin Wayne, age 17, Harvey Neal, age 15, Charlie Warren, age 8, and Vera Ellen, age 6, decedent's brothers and sister, respectively, all of whom were attending school. Decedent worked aboard the tug "Harriet Ann" 30 days on and 20 days off which off periods he spent in the home occupied by his mother, brothers and sister. In addition to providing the home, decedent also owned a truck and a cow which plaintiff and other members of the family were permitted to use and enjoy during decedent's absence from home.
With the approximately $250 of decedent's income which plaintiff used each month, she paid grocery bills amounting to approximately $150, the remainder of said $250 being spent for clothing and necessities for her children but virtually none of which she used for herself. She frankly conceded her needs were simple and few and were met out of welfare payments which she received. She purchased no clothing with money given her by decedent, her requirements in this regard being fulfilled by a daughter in military service who sent plaintiff clothing from time to time. The remaining $100 per month of decedent's income, plaintiff kept for said decedent. It is clear, therefore, that decedent was maintaining his mother, plaintiff herein, and decedent's younger brothers and sister in decedent's own home and that they all jointly and collectively enjoyed the benefits of decedent's extraordinary generosity.
We believe a clearer understanding of the specific issues involved herein will be had by our setting forth at this juncture certain well established rules and principles which both plaintiff and defendant concede to be applicable to cases arising under the Jones Act.
Federal judicial authority and power extends to "all cases of admiralty and maritime Jurisdiction". Art. 3, § 2, U.S.Constitution. When the Congress of the United States enacted the Jones Act it became paramount and exclusive in its operation and the question of the proper amount of damages in a suit by either an injured seaman or the beneficiary of a deceased seaman under the Jones Act must be determined according to principles of law as enunciated by the Federal Court in Chesapeake & O. R. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117. In such instances, a state statute or a decision of a state court limiting the amount of recovery is not controlling. Chicago, R. I. & P. R. Co. v. Devine, 239 U.S. 52, 36 S.Ct. 27, 60 L.Ed. 140. See also Annotations 96 L.Ed. 408, et seq.
A seaman (or in the event of his death, his beneficiary) is entitled to the full benefit of applicable Federal law when a state court undertakes adjudication of his claim or claims arising under maritime law. McAllister v. Magnolia Pet. Co., 357 U.S. 221, 78 S.Ct. 1201, 2 L.Ed.2d 1272. The right to jury trial of claims under the Jones Act is expressly granted a litigant *414 as evidenced by the following appearing in 46 U.S.C.A., § 688:
"* * * in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. * * *"
The "railway employees statute" referred to in the hereinabove cited portion of 46 U.S.C.A. § 688 is the Federal Employers' Liability Act commonly known and referred to as "FELA", a pertinent portion of which Federal Employers' Liability Act is contained in 45 U.S.C.A. § 51 which provides as follows:
"Every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed * * *, or in case of the death of such employee, to his * * * personal representative, for the benefit of * * * such employee's parents * * * for such * * * death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier * * *."
Concurrent jurisdiction in cases arising under the Jones Act is conferred upon the courts of the several states under the authority of 45 U.S.C.A. § 56.
The rule obtaining in this state in accordance with Article 7, § 29 of the Louisiana Constitution of 1921, LSA, is that the Appellate Courts of Louisiana may hear appeals on both facts and law and may reverse a lower court on a finding of fact when such factual determination is deemed erroneous. Such rule, however, does not apply to a claim under the Jones Act tried in the courts of this State. In Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, in reversing the decision of the Supreme Court of Missouri which set aside an award in a FELA case on the ground that plaintiff's proof did not establish defendant's liability, the Supreme Court of the United States held that under the circumstances the judicial right of review of facts is restricted to the single inquiry of whether, within reason, the evidence adduced supports the conclusion that the negligence of the employer played any part at all in the injury or death of the employee. In cases under the Jones Act appellate courts can and should reverse the judgment of a trial court in the event of erroneous rulings by the lower tribunal on questions of law such as erroneous instruction to the jury regarding the rules and law applicable in such cases unless it affirmatively appears from the record as a whole that such errors were harmless. Fillipon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853, and United States v. River Rouge Imp. Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339; Majestic v. Louisville & N. R. Co., 6 Cir., 147 F.2d 621.
The measure of quantum adopted and established by the Federal courts in cases arising under the Jones Act (which criteria is binding upon state courts hearing such cases) has on numerous occasions been stated and made clear. In Michigan Cent. R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 195, 57 L.Ed. 417, the United States Supreme Court declared:
"* * * essentially identical with the first act which ever provided for a cause of action arising out of the death of a human being * * *, known as Lord Campbell's act.
* * * * * *
"The distinguishing features of that act are identical with * * * (FELA): First, it is grounded upon the original wrongful injury of the person; second, it is for the exclusive *415 benefit of certain specified relatives; third, the damages are such as flow from the deprivation of the pecuniary benefits which the beneficiaries might have reasonably received if the deceased had not died from his injuries.
"The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. * * * There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived. Compensation for such loss manifestly does not include damages by way of recompense for grief or wounded feelings. * * *
"The word `pecuniary' did not appear in Lord Campbell's act, nor does it appear in our act * * *. But the former act and all those which follow it have been continuously interpreted as providing only for compensation for pecuniary loss or damage.
"A pecuniary loss or damage must be one which can be measured by some standard. It is a term employed judicially, `not only to express the character of that loss to the beneficial plaintiffs which is the foundation of their right of recovery, but also to discriminate between a material loss which is susceptible of a pecuniary valuation, and that inestimable loss of the society and companionship of the deceased relative upon which, in the nature of things, it is not possible to set a pecuniary valuation.' * * *
"Nevertheless, the word as judicially adopted is not so narrow as to exclude damages for the loss of services of the * * * child, * * *."
In American R. Co. of Porto Rico v. Didricksen, 227 U.S. 145, 33 S.Ct. 224, 225, 57 L.Ed. 456, we note:
"The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee."
The foregoing rule was reiterated in Chesapeake & O. R. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 631, 60 L.Ed. 1117, in which the Federal Supreme Court states:
"The damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the deceased. (Citing cases). So far as a verdict is based upon the deprivation of future benefits, it will afford more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded. It is self evident that a given sum of money in hand is worth more than the like sum of money payable in the future."
In the case at bar the entire instruction given the jury by the trial court on the question of quantum reads as follows:
"No award can be made in this case to anyone other than Mrs. Presley, decedent's mother. If you render a verdict in her favor it should be in an amount sufficient to compensate her for the loss of monetary benefits which would have come to her if the decedent had lived, taking into consideration the present cash value of future benefits, making adequate allowance for the earning power of money, based upon a discount rate that does not call upon her to exercise skill in making investments.
"In addition she is entitled to an award for any conscious pain and suffering which you may find from the evidence that the decedent experienced prior to his death. If you find that the decedent experienced only such pain and suffering as were substantially contemporaneous with his death or mere incidents to it, or only the short *416 period of insensibility which sometimes intervenes between fatal injuries and death, then you should award nothing for his pain and suffering."
Able counsel for plaintiff argues that since the measure of damages in the instant case is the deprivation of pecuniary benefits which plaintiff might have reasonably expected if her son had not died, the instruction given by the trial court on measure of quantum was erroneous and inadequate and did not fully apprise the jury of the true criteria of damages and was therefore prejudicial to plaintiff's cause.
Learned counsel also contends the trial court committed further reversible error in refusing to give the jury the following special instruction requested in plaintiff's behalf: "True measure of damages in this case is Mrs. Presley's deprivation of pecuniary benefits for which she had a reasonable expectation if Barney had not died."
Additional error is charged against the esteemed trial court by plaintiff because of the refusal of the court to instruct the jury as follows: "Use made by Mrs. Presley of contributions to her by Barney during his lifetime is irrelevant and immaterial on issue of reasonable expectation of pecuniary benefits of which Mrs. Presley has been deprived as a result of Barney's death."
Reversible error is also attributed to the trial court predicated upon the failure and refusal of the court to give the jury the following special instruction requested by plaintiff: "Contributions by Barney during his lifetime to his mother have a direct bearing on issue of reasonable expectation of pecuniary benefits of which Mrs. Presley has been deprived as a result of Barney's death."
It is an elementary rule of law that in a civil jury trial whereas the jury is judge of the facts as well as the law, the function of the court is to properly charge the jury as to the applicable law and the jury must accept and apply the law as given it and instructed by the court.
Without proper explanation of all facets of the law involved in the particular case being tried, a jury is unable to fairly adjudicate the rights, liabilities and obligations of the contending parties. Therefore, it was incumbent upon the trial court to give all requested instructions material to the position of either of the adverse parties to this litigation.
In effect plaintiff contends that use of the words "loss of monetary benefits which would have come to her if the decedent had lived" by the trial court in instructing the jury regarding the measure of damages to which plaintiff is entitled was detrimental to plaintiff's cause in that there is a distinct difference in meaning between the charge given and the requested charge that "True measure of damages in this case is Mrs. Presley's deprivation of pecuniary benefits for which she had reasonable expectation if Barney had not died". Plaintiff maintains the charge given infers that quantum is predicated upon, related to and affected by dependency and need whereas such factors do not constitute an element of damages in a FELA case. It is the further position of plaintiff that the charge rendered implies an obligation on the part of plaintiff to prove with certainty the amount that would come to her if decedent had not died whereas the requested charge does not carry such inference.
On the other hand, astute counsel for defendant contends that no prejudicial error was committed by the trial court's employment of the term "monetary benefits which would have come to her" instead of using the expression "reasonable expectation of pecuniary benefits of which she has been deprived". In this regard, counsel for defendant argues the term used and the one requested mean the same thing, namely, how much in benefits, measured in terms of money, plaintiff would have received if decedent had lived.
*417 Although counsel for plaintiff insists that there is a distinction between the meaning and connotation between "monetary" as distinguished from "pecuniary", counsel for defendant argues the words are synonymous and any attempt to establish a distinction or difference is merely a play on words. In this connection learned counsel for defendant points out that according to the Britannica World Language Dictionary "monetary" and "pecuniary" are defined as follows:
 MonetaryPertaining to money, finance
 or currency; consisting of
 money; pecuniary.
 PecuniaryConsisting of or relating to
 money; monetary. Having
 a monetary penalty; entailing
 a fine.
Defendant submits that no error was committed by the trial court in either the choice of the words used or the failure of the trial judge to give plaintiff's requested charge that use by plaintiff of the money given her by decedent was immaterial and irrelevant.
As contended by counsel for plaintiff, we believe the trial court's refusal to charge the jury in effect that the true measure of damages is plaintiff's deprivation of pecuniary benefits which plaintiff might reasonably expect to receive if her son had lived constitutes reversible error.
The decisions of the various Federal courts are consistent in the use of language which in effect holds that the measure of damages in FELA cases is deprivation of pecuniary benefits reasonably to be expected by the party entitled thereto.
Thus, according to the Vreeland case (Michigan Cent. R. Co. v. Vreeland, 227 U. S. 59, 33 S.Ct. 192, 57 L.Ed. 417), the beneficiary is entitled to such damages as flow from the deprivation of the pecuniary benefits which the beneficiary might have reasonably received if the decedent had not died.
And in American R. Co. of Porto Rico v. Didricksen, 227 U.S. 145, 33 S.Ct. 224, 57 L.Ed. 456, the court, in effect, stated damages recoverable are limited to such loss as results to the beneficiary because of deprivation of a reasonable expectation of pecuniary benefits by the wrongful death of the decedent.
In the language of the Supreme Court of the United States in Chesapeake & O. R. Co. v. Kelly, 241 U.S. 485, 36 S.Ct. 630, 60 L.Ed. 1117, the damages should be equivalent to compensation for the deprivation of the reasonable expectation of pecuniary benefits that would have resulted from the continued life of the decedent.
Federal jurisprudence is also firmly established to the effect that dependency of a parent upon decedent for financial assistance is not an element of damages in cases of this character. Moffett v. Baltimore & O. R. Co., 4 Cir., 220 F. 39; 17 C.J. 1212, verbo Death § 60; 25 C.J.S. verbo Death § 33, p. 1108; Smelser v. Southern Ry. Co., D.C., 148 F.Supp. 891.
We believe the connotation and scope of the language employed in the numerous Federal decisions, namely, "deprivation of the reasonable expectation of pecuniary benefits" or words of similar import and meaning to be vastly different from the phrase "monetary benefits which would have come to her". In our judgment, the paramount, basic and important difference is not in the choice of the word "monetary" instead of "pecuniary", which are, as pointed out by counsel for defendant, more or less synonymous, but rather use by the trial court of the phrase "which would have come to her" instead of "deprivation of the reasonable expectation of pecuniary benefits". The phrase "would have come to her" in our view, implies the requirement of proof of more than a reasonable expectation. In other words, we believe it carries the implication that plaintiff is required to prove not what she could reasonably expect but that which she would in fact actually receive. "Reasonable expectation *418 of pecuniary benefits", in our judgment, suggests that plaintiff is entitled to recover that which she may reasonably anticipate to accrue without proof that it will in fact be forthcoming.
The rationale of the various Federal decisions appears to be that recovery is based on the reasonable expectation the pecuniary benefits will continue and not upon benefits which would necessarily have flowed or be actually received. Nowhere in any of the Federal decisions do we find language indicative of an obligation on the part of a beneficiary to prove with certainty the amount of benefits that "would have come" or which would, in fact, be received. To do so would impose an undischargeable onus upon a plaintiff considering the obvious impossibility of one individual proving with any degree of exactitude or certainty what another would do if said other party had lived. Although the decisions clearly state that damages recoverable are limited to the financial loss sustained by the beneficiary, the measure thereof, for good and obvious reasons, is uniformly stated to be the amount the beneficiary might reasonably expect to receive upon the continued existence of the decedent. We submit that it is entirely within the realm of possibility that one may establish what might reasonably be expected of another but that it cannot be shown with any degree of positiveness what another individual will, in fact, do at some future date.
The phrase "would have come" is, in our opinion, inferentially restrictive in that it is suggestive of a degree of certainty or definiteness whereas "reasonable expectation" is patently more liberal and involves a less onerous burden of proof. Since the act is to be liberally construed and interpreted in favor of plaintiff, (Jamison v. Encarnacion, 281 U.S. 635, 50 S.Ct. 440, 74 L.Ed. 1082; Rogers v. Missouri P. R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493) and since neither dependency or need is an essential element of damages, it follows that what one "may reasonably expect" is broader in scope than "what would come to one". What plaintiff herein lost was not what would come because there is no certainty that any further pecuniary advantages would, in fact, continue to come or flow as a result of the continued life of decedent. Her loss, however, was the pecuniary benefit she could reasonably anticipate or expect to continue if decedent had continued to live irrespective of whether receipt of same was actually forthcoming.
The charge given required of plaintiff proof of a nature and to a degree not contemplated under the Act. It follows that the failure and refusal of the trial court to charge the jury, as requested by plaintiff, to the effect that the measure of damages is plaintiff's deprivation of the pecuniary benefits which she might reasonably expect to receive if her son had not died, was prejudicial to plaintiff's cause and constitutes reversible error.
Plaintiff also complains that the trial court erred in refusing to give the jury the following requested special instruction: "Contributions by Barney during his lifetime to his mother have a direct bearing on issue of reasonable expectation of pecuniary benefits of which Mrs. Presley has been deprived as a result of Barney's death."
That plaintiff was entitled to the foregoing special instruction has already been decided by the Federal Courts. Cleveland Tankers v. Tierney, 6 Cir., 169 F.2d 622. Even without the authority of Cleveland Tankers v. Tierney, supra, if the matter were presented to us as a matter of first impression, we would be inclined and disposed to hold that decedent's contributions during his lifetime have a direct bearing on the pecuniary benefits plaintiff might reasonably expect from him had he lived. We know of no better standard by which to predict or anticipate the future conduct of an individual than by his record of past performance. We believe plaintiff was entitled to the requested instruction with amplification thereof (for protection of defendant's interest) to the effect that previous contributions by *419 the decedent are only one of the several factors governing measure of damages and whereas such factor should not be considered conclusive it should, however, be considered as an element or circumstance to be weighed and considered together with all the evidence.
We believe, however, the learned trial court properly rejected plaintiff's requested charge to the effect that plaintiff's disposition of the contributions made to her by decedent is immaterial and irrelevant. The controversial portion of the charge in question reads as follows:
"* * * but it is irrelevant and immaterial how Mrs. Presley spent such contributions; the amount of the contributions being important, but what she did with such contributions, such as providing a home for herself and her minor children, is not important, and you should therefore disregard any argument as to what she did with the contributions that she received."
As hereinabove previously shown, the record indicates beyond any doubt that decedent was in effect maintaining a home in which decedent supported plaintiff herein (decedent's mother) and decedent's younger brothers and sister. To say that plaintiff's disposition of the contributions made to her by decedent is immaterial is, under the facts and circumstances of this case at least, tantamount to extending coverage to persons not entitled thereto, namely, decedent's brothers and sister, who are not parties to this litigation. Able counsel for defendant is quite correct in asserting that plaintiff alone is entitled to recover herein and we discern no error in that portion of the charge of the trial court which so instructed the jury.
The use and disposition of decedent's contributions by the recipient is but another factor to be considered and weighed by the jury in resolving the issue of the value of pecuniary benefits plaintiff might reasonably anticipate in futurity. Although we readily agree with counsel for plaintiff that need and dependency are not the criteria since there well may be cases in which a comparatively wealthy parent is receiving substantial contributions from a child and others wherein a parent in dire need is virtually ignored (the two possible extremes), each case must perforce be decided in the light of all relevant circumstances. It seems palpably clear to us that what a parent may reasonably anticipate by way of future contributions will to some extent be affected and governed by the motives and circumstances underlying previous contributions. It is not open to serious argument that circumstances are subject to change with time and that foreseeable probable variations of the recipient's status and position can have an effect and bearing upon the duration, extent, degree and continuity of the pecuniary benefits which may reasonably be expected in any given case. In other words, the amount as well as the period during which a parent may reasonably expect pecuniary benefits to continue is a matter of concern to the jury in assessing damages under the act and any element, circumstance or matter affecting this factor or by which it may be reasonably expected to be affected can and should be considered by the jury in making an award. Some circumstances shown to presently exist may, in the normal course of events, be logically expected to change resulting in a reasonably foreseeable modification of a previously established pattern of conduct. Insofar as it may shed some light upon the reasonable expectancy of plaintiff to receipt of contributions from decedent, the question of her use and disposition thereof is a matter to be determined by the trier of fact.
Plaintiff has suggested that in the event a new trial is ordered the scope thereof be limited and confined to the issue of quantum alone.
Article 1971 of L.S.A. Code of Civil Procedure provides for the granting of a new trial to all or any of the parties on all or any part of the issues. Note (e) under said Article 1971 makes it abundantly *420 clear the article incorporates the federal rules regarding the granting of partial new trials.
Federal jurisprudence appears well settled to the effect that where issues are separate and distinct and the issue as to which a new trial is required is separate from all others and the error necessitating a new trial does not affect determination of any other issue, the scope and extent of the new trial may properly be limited and restricted to the issue with respect to which error was committed. LSA-Code of Civil Procedure, Art. 1971, Federal Rules of Civil Procedure, rule 59(a), 28 U.S.C.A.; Devine v. Patteson, 6 Cir., 242 F.2d 828; Chesevski v. Strawbridge, etc., D.C., 25 F. Supp. 325; Darbrow v. McDade, 3 Cir., 255 F.2d 610; Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 51 S. Ct. 513, 75 L.Ed. 1188; Barron & Holtzoff, Vol. 3, Sec. 1307, page 384.
In the case at bar although defendant did not concede liability in the trial court and the issue of liability was sharply contested before the jury, in both brief and oral argument before this court, learned counsel for defendant candidly acknowledges that any and all objections entered by defendant on trial of this cause are without merit. Moreover, counsel for defendant now concedes the correctness of the jury verdict and award and urges our affirmation thereof. As previously shown, defendant confesses having suspensively appealed solely for the purpose of preventing execution of plaintiff's judgment pending plaintiff's devolutive appeal.
Under such circumstances, it would seem that retrial of the issue of liability would be vain and unavailing inasmuch as it would only entail unnecessary delay, expense and inconvenience to all concerned. The issue of defendant's liability vel non is separate and distinct from the question of damages; it is unaffected by any error on the part of the trial court herein and has been fully litigated between the contestants involved in this lawsuit. It appears, therefore, that the instant case meets all legal and equitable requirements of the rule permitting the granting of a new trial restricted to a single issue.
It is, therefore, ordered, adjudged and decreed that the judgment of the trial court be and the same is hereby affirmed insofar as it decrees liability herein on the part of defendant Upper Mississippi Towing Corporation and annulled, reversed and set aside with respect to the award of damages made in favor of plaintiff, Mrs. Corine Presley, Administratrix of the Succession of Barney W. Presley, Jr.
It is further ordered, adjudged and decreed that this cause be and the same is hereby remanded to the Honorable Nineteenth Judicial District Court in and for the Parish of East Baton Rouge, Louisiana, for retrial of the issue of damages or quantum only, consistent with the views herein expressed.
Affirmed in part, reversed in part and remanded.

On Application for Rehearing
PER CURIAM.
Application for rehearing was filed herein on behalf of defendant, Upper Mississippi Towing Corporation, in which learned counsel for defendant contends our original decree herein reversing the judgment of the trial court and ordering a retrial of this cause on the question of quantum only was erroneous in several respects. Alternatively, learned counsel for defendant urges that in the event we persist in our former decision to remand this matter for further proceedings, a new trial should be ordered in toto and not restricted to the question of quantum or damages only.
Of the numerous contentions made by able counsel for defendant, we find merit only in the argument that a new trial in toto should be decreed upon remand of this matter to the trial court for further proceedings.
*421 In this regard it must be pointed out that in defending this matter, defendant has expressly pleaded contributory negligence on the part of decedent Barney W. Presley, Jr.
As stated in our original opinion, a limited or partial new trial may properly be ordered (under applicable jurisprudence) where the issues are in fact separable and unconnected and when the rights of litigants will not be adversely affected thereby.
Able counsel for defendant has further directed our attention to applicable Federal jurisprudence regarding the relationship between recoverable damages and the conduct of a party seeking recompense for personal injury or loss. In this connection, we note the following language appearing in Norfolk Southern Railroad Company v. Ferebee, 238 U.S. 269, 35 S.Ct. 781, 782, 59 L.Ed. 1303:
"But a substantive right or defense arising under the Federal law cannot be lessened or destroyed by a rule of practice. Damages and contributory negligence are so blended and interwoven, and the conduct of the plaintiff at the time of the accident is so important a matter in the assessment of damages, that the instances would be rare in which it would be proper to submit to a jury the question of damages without also permitting them to consider the conduct of the plaintiff at the time of the injury."
Although the Supreme Court of the United States in the Ferebee case, supra, affirmed the granting of a partial new trial by the Supreme Court of North Carolina (after finding the issues separable), the following appearing therein constitutes a clear expression of our Federal Supreme Court on the question of the general practice of granting a new trial in FELA cases:
"Under the facts, therefore, it cannot be said that the decision operated to deprive the railway company of a Federal right. But we recognize that the practice is not to be commended. Before granting partial new trials, in any case under the Federal employers' liability act, it should, as said by the supreme court of North Carolina, `clearly appear that the matter involved is entirely distinct and separable from the other matters involved in the other issues and * * * that no possible injustice can be done to either party. In cases of this character we do not know that the practice is generally to be commended.' The North Carolina court further said in that case:`An examination of all the evidence relating to the injury and its cause and the conduct of the plaintiff, as well as of defendant's agents, might show that it is so interwoven with that relating to damage that to fairly ascertain what is a just compensation the plaintiff should receive, if he is entitled to recover at all, can best be determined by trying the whole case before one judge and one jury instead of "splitting it up" between different judges and different juries.' (Citations)".
It would appear, therefore, that the question of alleged contributory negligence on the part of decedent, Barney W. Presley, Jr., is so vitally connected to and linked with the issue of defendant's liability as well as that of the amount of quantum due in the event of plaintiff's recovery in these proceedings, we concede that one issue cannot logically and reasonably be separated from the other. In view of the foregoing, we believe that the interests of justice will be served by ordering a new trial herein in toto.
Accordingly, it is ordered, adjudged and decreed that our former opinion herein reversing the judgment of the trial court and directing that a new trial be granted plaintiff solely on the question of quantum be and the same is hereby annulled, rescinded and recalled and that there be judgment herein reversing and setting aside the judgment of the trial court in favor of plaintiff herein *422 and remanding this matter to the trial court for a new trial in toto on all issues involved in this lawsuit consistent with the views herein expressed; all costs of said former trial as well as the costs of this appeal to be paid by defendant, Upper Mississippi Towing Corporation.
Rehearing denied.
LOTTINGER, Judge (dissenting).
I am of the opinion that the judgment of the lower Court is correct and same should be affirmed.

ON SECOND REHEARING
Plaintiff, Corine Presley, instituted this action under the Jones Act (46 U.S.C.A. § 888) to recover damages in the sum of $100,000.00 for the death of her unmarried seaman son killed while in the course of his employment aboard the tugboat "Harriet Ann" owned by defendant, Upper Mississippi Towing Corporation.
After jury trial, the court below, predicated upon a verdict in favor of plaintiff, entered judgment in favor of plaintiff and against defendant in the sum of $12,000.00. From said judgment plaintiff appealed devolutively praying that the verdict and judgment be set aside because of the trial court's alleged error in refusing to give the jury certain special instructions requested by plaintiff on the issue of quantum and further that this cause be remanded to the lower court for a new trial restricted to the issue of damages alone. Defendant appealed suspensively contending, in substance, that the judgment of the trial court was correct and should be affirmed.
We initially rendered judgment in favor of plaintiff reversing the judgment of the trial court and remanding this matter to the court below for a new trial limited solely to the question of damages. Upon defendant's application for rehearing, however, by a per curiam decision, we revised and amended our decree, reversed the judgment of the trial court, denied the rehearing requested by defendant and remanded this matter to the court below for retrial on the issue of defendant's alleged liability as well as that of damages.
The present application for rehearing is by plaintiff Corine Presley who, in her representative capacity, complains that we fell into error both procedural and substantive in changing our judgment from an affirmance to a reversal by per curiam rendered pursuant to defendant's application for rehearing without either granting or denying the requested rehearing and without affording plaintiff an opportunity to be heard thereon.
We acknowledge the position of present applicant in this regard to be well taken. The rules of this court as well as the settled jurisprudence of this state provide that upon application for rehearing the Courts of Appeal may not change or alter the nature of an initial decree but only grant or deny the requested rehearing and set the matter for argument in the event a rehearing is ordered. Rule XI, Section 2, Rules, Court of Appeal, First Circuit, effective July 1, 1961, 8 LSA-R.S.; Reed v. Corbin, 115 La. 137, 38 So. 942; Jacobs v. Lagrange, 9 La.App. 409, 119 So. 538.
We deem it neither necessary nor desirable to review in detail the holding in the original opinion and per curiam rendered herein. It suffices to say that we therein concluded the learned trial judge erred in refusing to instruct the jury regarding the issue of quantum as specially requested by plaintiff. Based on said finding, we set aside the jury verdict and judgment and remanded the cause for trial on the question of damages alone. In the per curiam rendered pursuant to defendant's application for rehearing, we revised our former decree and remanded the case for trial on all issues.
The present application for rehearing entered on behalf of plaintiff therefore presents but a single issue, namely, whether *423 upon remand to the lower court retrial of this matter should be granted in toto or restricted to the question of damages only.
In our original decree we set forth the reasons why Federal law and jurisprudence are decisive and controlling with respect to the questions of law presented for resolution in the case at bar.
Appropos the present application for rehearing is the following provision of the Jones Act contained in 46 U.S.C.A. § 688:
"* * * in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. * * *"
In the Railway Employees Statute referred to in the above cited portion of Section 688, Title 46 U.S.C.A., more precisely in Title 45 U.S.C.A. § 53, we note the following applicable Federal law:
"In all actions hereafter brought against any such common carrier by railroad under or by virtue of any of the provisions of this chapter to recover damages * * * where such injuries have resulted in his death, the fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee. * * *"
From the foregoing Federal statutory authority and the innumerable decisions cited thereunder, it is settled beyond the point of argument that assuming, arguendo, decedent Presley was guilty of negligence contributing to his death such contributory negligence would not constitute an absolute bar to plaintiff's recovery herein but could only be considered in diminution or reduction of the damages to which plaintiff is entitled in the event of defendant's liability.
We find no merit, however, in plaintiff's contention that upon remand of this matter for trial on the issue of quantum alone, defendant may not offer the plea of contributory negligence in diminution of damages for the reason defendant has failed to properly plead the issue of contributory negligence.
In paragraph 56 of defendant's answer defendant specially alleged the following:
56
"Continuing to plead to plaintiff's petition, defendant avers in the alternative and only in the event this Court should find that defendant or any of its agents, employees or representatives have, for any reason whatsoever, any liability unto plaintiff for the death by drowning of Barney W. Presley, Jr., all of which defendant denies, then in that event defendant specially pleads in mitigation of any award this Court should consider plaintiff is entitled to receive, that the said Barney W. Presley, Jr. was guilty of contributory negligence, which negligence on his part consisted of, among other things, the following acts, to-wit:
a) Failing to keep a proper lookout for his own safety and welfare;
b) Failing to realize the alleged "well known danger and likelihood" of falling from said barge into the water, and under those circumstances failing to take added precautions for his own safety such as an ordinary prudent person would have done under similar conditions;
c) Voluntarily assuming the risk attendant to performing the work assignment in the manner he did when he knew or could and should have known of the "likelihood" of an accident happening *424 under the existing circumstances;
d) Failing to follow known and accepted safety practices in connection with the performance of his work assignment;
all or any one of which acts on the part of Barney W. Presley, Jr. constituted contributory negligence on his part, are imputable to plaintiff, and are specially plead in mitigation of any award to plaintiff in this proceeding."
Learned counsel for plaintiff strenuously argues that the aforesaid averments of defendant's answer setting forth decedent's alleged contributory negligence is in reality merely a plea of assumption of risk which is not available to defendant in a case of this nature. In this connection able counsel cites Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 63 S.Ct. 444, 87 L.Ed. 610. The Tiller case, supra, reviewed the background of the 1939 Congressional Act (Title 45 U.S.C.A. § 54) which abolished the plea of assumption of risk in a Jones Act case. The Tiller decision, in unmistakable language held that a plea of assumption of risk by whatever name it may be denominated, is, by virtue of Title 45 U.S.C.A. § 54, unavailable as a defense to a suit under the railway employee's act. We note in said decision the following language:
"We hold that every vestige of the doctrine of assumption of risk was obliterated from the law by the 1939 amendment, and that Congress, by abolishing the defense of assumption of risk in that statute, did not mean to leave open the identical defense for the master by changing its name * * *. As this Court said in facing the hazy margin between negligence and assumption of risk * * *, `Unless great care be taken, the servant's rights will be sacrificed by simply charging him with assumption of the risk under another name;' and no such result can be permitted here."
After discussing the history of the doctrine of assumption of risk and the Federal Legislation of 1939, which abolished it in certain cases, the Tiller case states the following:
"It was this maze of law which Congress swept into discard with the adoption of the 1939 amendment to the Employers' Liability Act, releasing the employee from the burden of assumption of risk by whatever name it was called. The result is an Act which requires cases tried under the Federal Act to be handled as though no doctrine of assumption of risk had ever existed."
Conceding that sub-paragraphs (b) and (c) of Article 56 of defendant's answer clearly allege assumption of risk as distinguished from contributory negligence, we are convinced that the article as a whole and especially sub-paragraphs (a) and (d) thereof specifically, basically and fundamentally allege in the alternative (as required by the procedural rules of this state) contributory negligence on the part of decedent Barney W. Presley, Jr. Moreover, the closing paragraph of said Article 56 clearly alleges that "all or any one of which acts * * * constitute contributory negligence." Were the averments of Article 56 of defendant's answer limited solely to the allegations contained in sub-paragraph (b) and (c) thereof plaintiff's contention that only assumption of risk is alleged would be well taken. However, the assertion that decedent failed to keep a proper lookout for his own safety and failed to follow accepted safety practices attributes negligence to decedent flowing from his individual acts of omission as well as commission and affirmatively charges that decedent caused or contributed to his own death by his failure to exercise due care. Such alleged conduct on the part of defendant, if true, clearly constituted more than assumption of risk.
In opposition to plaintiff's application for rehearing capable counsel for defendant earnestly maintains that we should reinstate *425 the judgment rendered by per curiam upon defendant's application for rehearing and remand this matter to the lower court for trial de novo on all issues. In so contending counsel for defendant again urges that whereas Federal jurisprudence recognizes that under appropriate conditions a cause may be properly remanded for partial new trial, such practice is not to be commended and is to be indulged in only in those rare instances wherein no possibility of injustice to either party may result therefrom. Norfolk Southern Railroad Company v. Ferebee, 238 U.S. 269, 35 S.Ct. 781, 59 L.Ed. 1303.
In the per curiam previously rendered herein we relied to great extent upon certain pronouncements appearing in the Ferebee case, supra, in support of our ruling that a new trial should be granted herein on all issues including that of liability as well as quantum. We did not, however, at that time have the benefit of plaintiff's argument and brief on the issue now at hand and neither had our attention been directed to the provisions of Title 45 U.S.C.A. § 53 which, as herein previously shown, clearly provides that contributory negligence shall not bar recovery under a Jones Act case.
Examination of the Ferebee case (a decision of the United States Supreme Court) reveals that the court therein approved the ruling of the Supreme Court of North Carolina granting a partial trial on the question of damages alone predicated upon the specific finding by the trial jury that defendant was guilty of negligence and plaintiff free of contributory negligence. In referring to the record in the Ferebee case the Supreme Court of this nation stated:
"But this record, in connection with the special-finding first verdict, shows that in this case the two matters were in fact separable, so that the splitting up the issues and granting a partial new trial did not in this particular instance operate to deprive the defendant of a Federal right. * * *"
On the question of the general practice of granting a partial new trial in cases of the instant character the court opined:
"Under the facts, therefore, it cannot be said that the decision operated to deprive the railway company of a Federal right. But we recognize that the practice is not to be commended. Before granting partial new trials, in any case under the Federal employers' liability act, it should, as said by the supreme court of North Carolina, `clearly appear that the matter involved is entirely distinct and separable from the other matters involved in the other issues and * * * that no possible injustice can be done to either party. In cases of this character we do not know that the practice is generally to be commended.' The North Carolina court further said in that case:`An examination of all the evidence relating to the injury and its cause and the conduct of the plaintiff, as well as of defendant's agents, might show that it is so interwoven with that relating to damage that to fairly ascertain what is a just compensation the plaintiff should receive, if he is entitled to recover at all, can best be determined by trying the whole case before one judge and one jury instead of "splitting it up" between different judges and different juries.'" (Citations)
Considering the provisions of the hereinabove cited portion of Section 53, Title 45 U.S.C.A. expressly barring contributory negligence as a defense in cases of this character while simultaneously providing that contributory negligence may be pleaded and shown by way of diminution and reduction of damages due, the following language appearing in the Ferebee case, supra, appears significantly appropriate:
"But a substantive right or defense arising under the Federal law cannot be lessened or destroyed by a rule of practice. Damages and contributory negligence are so blended and interwoven, *426 and the conduct of the plaintiff at the time of the accident is so important a matter in the assessment of damages, that the instances would be rare in which it would be proper to submit to a jury the question of damages without also permitting them to consider the conduct of the plaintiff at the time of the injury."
We hold, therefore, that upon retrial of this matter in the court below the trier of fact is entitled to consider the contributory negligence of decedent, if any be shown, in diminution of damages due plaintiff herein.
Reference to our original opinion will disclose that whereas defendant herein did not concede liability in the court below, in both brief and oral argument learned counsel virtually conceded all objections entered by defendant on the trial of this matter were without merit. We pointed out further that counsel for defendant on appeal conceded the correctness of the jury verdict and urged its affirmance. In addition we also noted defendant's acknowledgment that the suspensive appeal perfected by defendant was taken principally for the purpose of preventing execution of plaintiff's judgment pending disposition of plaintiff's devolutive appeal and further observed:
"Under such circumstances, it would seem that retrial of the issue of liability would be vain and unavailing inasmuch as it would only entail unnecessary delay, expense and inconvenience to all concerned. The issue of defendant's liability vel non is separate and distinct from the question of damages; it is unaffected by any error on the part of the trial court herein and has been fully litigated between the contestants involved in this lawsuit. It appears, therefore, that the instant case meets all legal and equitable requirements of the rule permitting the granting of a new trial restricted to a single issue."
While it is quite true as contended by counsel for defendant, that the jury in the case at bar rendered a general verdict and did not specifically find defendant guilty of negligence and decedent free of contributory negligence, it is equally true that pursuant to instructions given by the learned trial judge in conformity with the laws and jurisprudence of this state, the jury could not cast defendant in damages without finding defendant guilty of negligence.
Further reflection upon the issue impels us to the conclusion that our original determination was correct and that this matter should be remanded to the lower court for trial on the question of damages only, but with the right of the trier of fact to offer evidence, if any, of decedent's alleged contributory negligence in diminution of damages.
From the record we are convinced that the issue has been fully litigated, defendant has had its day in court on the question of liability and we cannot perceive wherein any injustice will be heaped upon defendant by restricting the remand of this matter to the question of damages only. Assuming, arguendo, defendant may prove contributory negligence on the part of decedent, as hereinabove shown, such development could not completely bar plaintiff's recovery. Under the circumstances shown by the record in the case at bar we believe the issue of defendant's liability to be completely independent of and disassociated from any alleged contributory negligence of decedent Presley. We further believe that, in view of the circumstances obtaining herein, the issues of liability and damages are separate and distinct.
For the reasons hereinabove set forth as well as those in the original opinion rendered herein, the judgment of this court rendered in the per curiam opinion handed down pursuant to defendant's application for rehearing is hereby recalled, rescinded and set aside and the initial decree rendered herein is reinstated and made the judgment of this court.
In view of the above it is ordered, adjudged and decreed that the judgment of the *427 trial court be and the same is hereby affirmed insofar as it decrees liability herein on the part of defendant Upper Mississippi Towing Corporation and annulled, reversed and set aside with respect to the award of damages made in favor of plaintiff, Mrs. Corine Presley, Administratrix of the Succession of Barney W. Presley, Jr.
It is further ordered, adjudged and decreed that this cause be and the same is hereby remanded to the Honorable Nineteenth Judicial District Court, East Baton Rouge Parish, Louisiana, for retrial of the issue of damages only, consistent with the views expressed herein and in the former decision rendered in this matter.
Affirmed in part, reversed in part and remanded.