LOTTINGER, Judge.
This is a suit brought under the Jones Act, (46 U.S.C.A. § 688) and under the General Maritime Law for unseaworthiness and maintenance and- cure; This proceeding was instituted by Amy J. Galiano, individually and as administrator of the Estate of the minor, Ernie Galiano, for damages sustained while Ernie Galiano (hereinafter sometimes referred to as Galiano) was employed and working as a mate aboard the tug, JUNIOR II. The Trial Court awarded the plaintiff the sum of $651.55, for maintenance and cure, but disallowed recovery under plaintiff’s other allegations, finding that the defendant was free from negligence, and the JUNIOR II was seaworthy. Plaintiff-appellant has appealed from this judgment of the Trial Court, and has set forth three specifications of error, which we will individually discuss below.
The record points out without conflict that the JUNIOR II is a steel hull tug approximately 58 feet in length and 20 feet in breadth. This vessel was owned by the defendant company, Harris Doucet’s Sons, Inc. On the date of the accident, November 28, 1964, the JUNIOR II was manned by three crew members: Captain Daniel Eschete, Mate Ernie Galiano; and deckhand Teddie Melancon. It is further presented without conflict that Galiano had been working on boats from six to seven months, and that Melancon had only been working on a boat for approximately five to six days. With this complement on board, the vessel departed on the day of the accident from the California Company dock at Leeville, Louisiana, at approximately 11:00 a.m. with orders to pick up an empty oil barge at the California Company tank battery at Bayou Fourchon, and deliver it to the J.V.B. tank battery, approximately one mile away. Bayou Fourchon, or as it is also called, The Fourchon, is a navigable waterway which at one time entered the Gulf of Mexico, but has been for several years dammed at its Gulf exit. Bayou Fourchon connects with Bayou Lafourche at the Fourchon-Bayou Lafourche Junction, which is approximately two miles inland from Belle Pass. Bayou Lafourche is a navigable waterway which enters the Gulf of Mexico at a point called Belle Pass. The record further points out that the J.V.B. tank battery is located in a slip off Bayou Lafourche only a short distance inland from the Gulf of Mexico. The J.V.B. tank battery slip would then be located between the Fourchon-Bayou Lafourche Junction and Belle Pass.
When the JUNIOR II picked up the barge at the California Company tank bat *7 tery, the barge was put on a tow line and then towed up Bayou Fourchon to the Four-chon-Bayou Lafourche Junction, and then down Bayou Lafourche to a point opposite the mouth of the J.V.B. tank battery canal or slip. At this point, Captain Eschete determined that it would be necessary to take the barge off the tow line and make-up to the barge with push cables to better maneuver the tow. On this particular barge, there was a notch or depression on the center line of the barge at its after end to facilitate pushing by a model or pointed bow tug.
It is at this point of testimony, i.e., the making up of the tug to the barge in a push fashion rather than a tow, that there is conflict between the testimonies of Galiano and Melancon and the testimony of Captain Eschete. Galiano and Melancon contended that Galiano was on the barge and Melan-con was on the tug immediately prior to the accident. Captain Eschete testified to the opposite, and the Trial Judge upon hearing the testimony of all witnesses concluded that Melancon was on the barge and Galia-no was on the tug immediately prior to the accident.
From the various witnesses who testified as to the physical make-up of the tug, we have determined that the tug is a steel hull, model-bow tug of approximately 58 feet long and 20 feet wide. There is a bulwark or raised plating, approximately one foot high, along both sides. At the bow there is a triangular steel plate with the apex of the triangle pointing into the bow, and both legs of the triangle being welded on each side to the bulwark. This plate sits about one foot above the deck or even with the top of the bulwark. All three sides of this triangle are approximately one and a half feet in length. At the extreme bow of the tug, the bow stem extends about one and a half feet above the bulwark and resembles a six inch pipe which is covered with a steel plate eight inches in diameter. In the center of this plate is a one inch pipe about six or seven inches high. There are two small steel braces, about eighteen inches in length, on each side of the bow stem. These braces connect with the bow stem at a point about four to five inches above the level of the bulwark, and are in turn connected to the bulwark. There is a bumper of old automobile tires, about four feet in length and eight inches thick, and even with or just several inches below the main deck of the vessel, or about one foot and several inches below the top of the bulwark, on the bow end of the tug.
In attempting to secure the JUNIOR II to the barge in a push fashion, Galiano remained on the fore deck of the JUNIOR II and passed the face lines to Melancon who would then place the eye or loop on the end of these lines over the bitts on either side of the after end of the barge. Galiano would then secure these lines around the bow bitt on the fore deck of the JUNIOR II. Even though the face lines were secured, the tug and barge were still working against each other, as vessels are prone to do when not completely secured. Galiano then picked up the port or left cable and reached to give it to Melancon on the barge, and in doing so, he stepped over the bulwark and placed his left foot on the bumper with his right foot still on the deck of the tug. While in this position, the tug moved against the barge and thus pinched Galia-no’s left foot, causing injury complained of. Captain Eschete testified that he could observe Galiano, but that because of the position of the wheelhouse, he could not see the lower half of Galiano’s body, and therefore did not see Galiano put^ his foot on the bumper. The first that Captain Eschete knew of Galiano’s injury was when Galiano hollered, and at this time, Captain Eschete immediately put the gears into reverse in order to back away from the barge.
In Presley v. Upper Mississippi Towing Corporations, 141 So.2d 411, 414, La.App. 1st Cir. (1961), 153 So.2d 416, writs refused 244 La. 1002, 156 So.2d 56, we held that:
“The rule obtaining in this state in accordance with Article 7, § 29 of the Louisiana Constitution of 1921, LSA, is that *8 the Appellate Courts of Louisiana may hear appeals on both facts and law and may reverse a lower court on a finding of fact when such factual determination is deemed erroneous. Such rule, however, does not, apply to a claim under the Jones Act tried in the courts of this State. ”
Therefore, the facts found by the Trial Judge are essentially those as are above discussed.
Plaintiff contends that the Trial Judge was in error “in failing to find that the accident and injuries in question were caused solely through the negligence of defendant employer within the meaning of the Jones Act and/or the unseaworthiness of the vessel within the meaning of the General Maritime Law. ” It is contended that it was negligence on the part of the defendant to have as a deck hand, Teddie Melancon, who was inexperienced and incompetent, and such made the vessel unsea-worthy. It is vigorously argued that a deck hand with only five or six days working experience is not capable of adequately handling the chores on the tug which would be assigned to him, and as such, his inability to handle these chores made Galiano’s job more burdensome, and therefore, made the vessel unseaworthy. If this contention is correct, then the vessel owner would be placed in a precarious position each time he employed a new man and attempted to train this inexperienced individual. If during this training period, an accident happened on board, then, under the plaintiff’s contention, the vessel would be unseaworthy, and the injured party could recover. Furthermore, as the Trial Judge correctly concluded, there is no causal relationship between the inexperience of Melancon and the accident which happened. It may be true as was contended and brought out by the plaintiff, that Melancon was slow in doing his assigned task, but there was no need for Galiano to so place himself wherein the mere bumping of the two vessels would cause injury to his foot.
It is next contended by the plaintiff that the captain of the vessel was negligent in not keeping the tug under proper control during the making up of the tug to the barge. There was some testimony to the effect that the Captain had the gears in reverse prior to the time that Galiano placed his foot on the bumper, and that he then put the gears into forward causing the tug to ram the barge, and upon discovering that Galiano had been injured, then threw the gears into reverse. The Trial Judge concluded that prior to the accident the tug could have been backing up, with the gears in reverse, and as there was some connection by means of a rope between the tug and the barge, the barge had the tendency to follow the direction of the tug, and in order to slow down or slacken its backward speed, Captain Eschete put the gears in neutral, and the barge following the direction of its previous momentum came up against the bow of the tug, thus causing the injury complained of. We find no negligence on the part of the boat captain in his operation of the vessel.
In support of the above contention, plaintiff cited the case of Coyle Lines, Inc. v. Dugas, 196 F.2d 59 (C.A. 5th, 1952) for the proposition that the master of the tug is to be held negligent in failing to ascertain that a deck hand was free from danger before allowing a tow line to be taut, where the master sent the deck hand into an area of danger. In the instant case, the plaintiff was not required to go into a position of danger, and his placing his foot on the bumper was not necessary, nor was it the acceptable practice.
Plaintiff further contended that there was negligence and unseaworthiness on the part of the owner in having aboard the vessel an unsafe and hazardous condition at the bow-tip of a vessel which made it extremely difficult to board the vessel at the bow-end. Here the plaintiff is speaking of the piping which sticks out of the bow stem as we have above described. *9 Inasmuch as the Trial Judge found that Galiano was on the tug, and not on the barge, plaintiff’s argument as to the difficulty of going from the barge to the tug because of this pipe at the bow-tip of the vessel is of no consequence.
Plaintiff further alleges that the Trial Judge erred “in failing to find that plaintiff was free from any negligence insofar as the accident is concerned”. The Trial Judge found that it was unnecessary for the plaintiff to place his foot on the bumper of this vessel, and in so doing he placed his foot in a position and under conditions whereby it was very easy for him to become injured. Inasmuch as these two vessels were moving back and forth, it was most careless of the plaintiff to permit any part of his body to be in a position whereby if these vessels came together, he would be caught in the middle. There is no question but that Galiano knew of the space between the barge and the tug and should have known, as did Melancon, that sometimes the barge would hit the front of the tug, since the cables had not yet been attached nor had the ropes been completely secured.
As to the plaintiff’s third specification of error, i.e., the Trial Court’s “in failing to properly apply the Jones Act and General Maritime Law”, it must be pointed out that there can be no recovery under the Jones Act unless there can be found some negligence. The Trial Court found no negligence on the part of the captain or on the part of the vessel owner. As to the application of the General Maritime Law and the unseaworthiness claim, it is not merely sufficient to show an alleged unseaworthy condition, but that un-seaworthy condition must be a proximate cause of the injury. Reynolds v. Royal Mail Lines, 254 F.2d 55 (C.A.9th, 1958). The two unseaworthy conditions alleged by the plaintiff were the inexperience of Me-lancon and the pipe assembly located at the bow-tip. The Trial Court found no-causal connection between either of these conditions and the injury to Galiano. Therefore, we must conclude, that the Trial Court properly applied the Jones Act and the General Maritime Law.
Therefore, for the above and foregoing reasons, the judgment of the Trial Court is affirmed. All costs are to be paid by the defendant-appellee.
Judgment affirmed.