CULPEPPER, Judge.
This is a suit for damages for personal injury under the Jones Act (46 U.S.C.A. Section 688) and alternatively for maintenance and cure under the general Maritime Law. Plaintiff alleges that while employed as a seaman aboard a vessel owned by the defendant, D & A Construction Company, he suffered personal injuries caused by the negligence of defendant’s employees and/or the unseaworthiness of the vessel. After a jury trial lasting 4 days, verdict was rendered for the defendants. Plaintiff appealed.
The substantial issues are factual: (1) Was plaintiff a seaman employed on a vessel? (2) Did the alleged accident actually occur? (3) Were defendant’s employees negligent and/or its vessel unsea-worthy? (4) Was plaintiff disabled beyond the time compensation payments were made ?
The facts show that plaintiff had worked as a roustabout for D & A Construction Company for several years. On February 21, 1966 he was working on a pile driving job, building a bulkhead or seawall for a slip on the intracoastal canal. The pile driver was on a barge, 26 feet wide and 92 feet long, floating in the canal. There were about 7 men in the crew. Plaintiff was the “lead man”. The “lead” is a device attached to the end of the cable of the crane. It is used to pick up the piling and hold it in place while it is being driven with the hammer located in the top of the lead.
On the occasion in question, plaintiff contends he was riding the lead back to the barge when the crane operator dropped the lead too fast to the deck of the barge, jarring plaintiff. Plaintiff and two coworkers testified that he got down off of the lead and “grabbed his stomach” and complained of pain. Plaintiff continued to work the rest of that day and the next but stated that he felt pain in the groin area. He reported to the office of defendant on February 23, 1966 that he thought he was ruptured.
*225 He was sent to see Dr. Howard Alle-man, a general practitioner in Abbeville, who diagnosed a right inguinal hernia and referred plaintiff to Dr. Perry Suddeth, a general surgeon. The hernia was surgically repaired on March 8, 1966. The operation was successful and by about May 10, 1966 Dr. Alleman reported plaintiff had recovered completely from the hernia.
However, in about April of 1966 plaintiff began to complain to Dr. Alleman that he had low back pain. He was referred to Dr. William Muelman, an orthopedist, who first saw plaintiff on April 14, 1966. Plaintiff complained only of pain in the low back. There were no complaints as to the neck or thoracic region. Dr. Muelman found “slight signs” of a low back sprain. No treatment was prescribed. All symptoms had disappeared by the time Dr. Muelman saw plaintiff again on June 13, 1966. Dr. Muelman also expressed the opinion that plaintiff exaggerated his symptoms.
Plaintiff was also seen by Dr. James Gilly, an orthopedist, on May 25, 1966. He found muscle spasm in the lumbar area. By September 12, 1966 Dr. Gilly found that all of plaintiff’s symptoms had disappeared and that he was able to return to work. It is significant that Dr. Gilly examined plaintiff’s neck and thoracic spine and found no objective symptoms to support plaintiff’s subjective complaints of pain in this area.
Plaintiff was also seen by Dr. Joseph McClellan, a general practitioner of Abbe-ville. This physician was unable to recall the exact dates, but it must have been subsequent to the treatment by Dr. Muelman. Dr. McClellan wrote a memorandum dated' September 19, 1966 in which he stated that, based on the findings by Dr. Gilly, there was nothing wrong with plaintiff’s back and he could return to work.
The defendant insurer paid weekly benefits under the State Workmen’s Compensation Law from the date of the accident until December 6, 1966, a total of $1808.28, together with medical expenses in the sum of $885. These payments were terminated following the reports by Drs. Alleman, Muelman and Gilly that plaintiff had recovered both from the hernia and from any back symptoms and was able to return to work.
In about the middle of October, 1966, plaintiff went to work at Steen’s Syrup Mill where he worked for 8 weeks, until the middle of December, 1966. Of course, the purpose of this evidence was to show that plaintiff was recovered and was able to work.
In June of 1967 plaintiff was seen by Dr. David Regan, a psychiatrist. This physician opined that plaintiff was totally disabled by traumatic neurosis causally related to the accident of February 21, 1966. Dr. Regan’s diagnosis was partially based on the report of Mr. William Hawkins, a clinical psychologist.
In cases tried under the Jones Act in the courts of this state, appellate review of the facts is restricted to the inquiry of whether the evidence reasonably supports the factual findings of the jury. Galiano v. Harris Doucet’s Sons, Inc., 201 So.2d 5 (La.App., 1st Cir.1967) and the authorities cited therein.
Plaintiff makes a strong argument that if the basis of the jury verdict, denying any recovery whatsoever, was a finding of fact that plaintiff was not a seaman on a vessel, such a conclusion is not reasonably supported by the evidence. Plaintiff cites jurisprudence holding that special purpose structures, designed to float on water, are vessels and that workmen performing duties which contribute to the function of the vessel are seamen, Offshore Company v. Robison, 266 F.2d 769, 75 A.L.R.2d 1296 (C.A. 5th Cir. 1959).
However, defendant points out that we have no way of knowing the basis of the jury verdict. It could have been: (1) no accident was proved; (2) no negligence on the part of defendant’s crew was proved; *226 (3) the vessel was not proved to be unsea-worthy; (4) plaintiff did not suffer any disability beyond the time defendant was obligated to pay maintenance and cure under the General Maritime Law.
As to the evidence of the accident, plaintiff and 2 fellow crew members, Harry Dronet and Felix Davidson, testified that plaintiff was riding the leads when they were dropped too fast to the deck of the barge and that plaintiff grabbed his stomach and complained he was hurt. However, defendant’s witnesses, Raymond Romero, the crane operator, Dunias Faulk, a member of the crew, Doris Meaux, a member of the crew, and Mr. E. J. Adams, the foreman, all testified that they did not remember any such incident of the leads falling too fast or of plaintiff grabbing his stomach and complaining that he had been hurt.
Hence, there was reasonable evidence from which the jury could have concluded there was no accident or that no negligence was proved or that the vessel was not shown to be unseaworthy.
Even if the jury concluded that plaintiff was a seaman employed on a vessel and that the vessel was unseaworthy (but that no negligence was proved on the part of defendant’s crew members) thus entitling plaintiff to maintenance and cure, there was sufficient evidence on which the jury could have found that plaintiff was not disabled beyond the time compensation payments were terminated on December 6, 1966. Drs. Alleman, Muelman and Gilly expressed the opinion that plaintiff had recovered and was able to return to work by that time. Actually, plaintiff did return to work for the Steen’s Syrup Mill for a period of 8 weeks during October, November and December of 1966. The only medical evidence of any disability after December of 1966, is the opinion of the psychiatrist, Dr. Regan, that plaintiff was suffering from traumatic neurosis.
The extent and duration of plaintiff’s disability was a question of fact for the jury. Clearly, there was sufficient evidence on which the jury could have found no disability beyond December of 1966.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff appellant.
Affirmed.
On Application for Rehearing.
En Banc. Rehearing denied.