235 So.2d 641 (1970)
Sammy G. FERDINANDTSEN
v.
DELTA MARINE DRILLING COMPANY.
No. 3885.
Court of Appeal of Louisiana, Fourth Circuit.
May 4, 1970.
*642 Slavich & Eggleston, Chester A. Eggleston, Metairie, for plaintiff-appellee.
Christovich & Kearney, A. R. Christovich, Jr., New Orleans, for defendant-appellant.
Before REGAN, SAMUEL and SWIFT, JJ.
*643 SWIFT, Judge.
On August 26, 1964, the plaintiff, Sammy G. Ferdinandtsen, was seriously injured during the course of his employment with Delta Marine Drilling Company, defendant, aboard the latter's submersible drilling barge. The accident occurred on navigable waters in Plaquemines Parish while the barge was submerged for the purpose of drilling an oil well. At the time, however, the rig was shut down for repairs to the low drum clutch at the end of the drawworks.
Plaintiff, a floor hand or roughneck, was instructed by the defendant's mechanic, who was in charge of the repairs, to help put the low drum clutch housing back on the shaft of the drawworks. The housing was round, with a diameter of between three to four feet and a thickness of from six to eight inches. Its weight was estimated roughly at around 1200 or 1500 pounds.
It was necessary to roll the heavy housing about ten feet to the place where it was to be lifted by an air hoist and positioned on the shaft. Plaintiff said he suggested to the motorman, who was one of his supervisors on the drilling crew, that they might need more men for the job, but he was assured the two of them could handle it. With the motorman on the left and plaintiff on the right the housing was rolled on the metal floor of the drilling barge to the intended position.
The plaintiff testified that after it came to a stop he let go in order to operate the air hoist. The motorman did not remember whether or not the housing had come to a complete stop, but at this point it became unbalanced and fell towards the plaintiff's side. According to the latter, in attempting to get out of the way, he tripped over a piece of pipe that was in a burlap sack on the floor. The housing fell on him, causing injuries principally to his left knee.
Neither the plaintiff nor the motorman were able to say just what caused the housing to become unbalanced. However, plaintiff contends that more than two men were required to perform the job safely, and that if the floor had been clean he could have escaped injury by stepping away from the housing as it fell. Delta Marine's tool pusher and mechanic testified that such housings are customarily rolled by only two persons and that more than two men would get in each other's way. No other person recalled the plaintiff tripping over any particular object as the housing fell. Defendant's witnesses thought the floor was clean, but they readily admitted that pipe connections and other accessories could have been at such location, because this is usually the case when a low drum clutch is disassembled for repairs.
It was also contended that the housing became unbalanced because of sway in the metal plates or unevenness of the deck of the drilling barge. Except for admissions by defendant's employees of such remote possibilities, no positive proof was offered in support of this contention.
Arthrotomies were performed on plaintiff's left knee by orthopedic surgeons on two occasions, the first by Dr. Arthur G. Kleinschmidt on September 14, 1964, and the second by Dr. Nick J. Accardo in May, 1966. Nothing of great significance was noted on the first operation. However, on the second the physician found tears in the medial meniscus and the lateral meniscus and both were removed. The doctor also found marked involvement of chondromalacia of the medial articular facet of the patella and this area was debrided.
Dr. Accardo discharged plaintiff on October 21, 1966, with a twenty-five per cent residual disability of the knee which in this physician's opinion would not prevent the patient from returning to his former occupation as an oil field worker. However, Ferdinandtsen was seen subsequently by Dr. Byron M. UnKauf, another orthopedic surgeon, who concluded from his examination of January 21, 1969, that he had a permanent disability of from twenty-five to thirty-five per cent of the left leg and was *644 totally disabled for oil field work. Dr. UnKauf expressed the opinion that the chondromalacia had increased and at some time in the future the plaintiff might have to submit to surgery for removal of the patella or even the fusion of his knee.
Dr. Irving Redler, another orthopedist, examined Ferdinandtsen at defendant's request on February 5, 1969. He found evidence of chondromalacia of the patella and atrophy of the muscles of the left thigh and estimated plaintiff's residual disability to be between twenty and twenty-five per cent of the left lower extremity. Dr. Redler expressed no opinion as to whether or not this would interfere with his performance of oil field work.
Plaintiff testified that he is not physically able to do oil field work. However, he has been gainfully employed in other occupations since he was discharged by Dr. Accardo.
Mr. Ferdinandtsen acknowledged that he made $3798.00 in the approximate seven months' period he worked for Delta Marine prior to the accident in August, 1964, which we calculate to be about $540.00 per month or $6500.00 per year. His income tax returns reflected that plaintiff earned $739.67 in 1965, $4750.00 in 1966, and $6482.00 in 1967. However, he testified that $630.28 of the latter sum was his wife's earnings. Ferdinandtsen's reported income from the operation of a butane gas truck in 1968 was about $4500.00. At the time of the trial in 1969, he was doing this and also was employed as a school bus driver earning an additional $325.00 a month for a ten month period.
This suit under the Jones Act (46 U.S. C.A. Section 688) and the general maritime law was submitted to the jury for a special verdict on written interrogatories. In its answers the jury found that the drilling barge was a vessel, plaintiff was a member of its crew, Delta Marine Drilling Company was negligent and such negligence played a part in plaintiff's injury, the barge was unseaworthy and this was a proximate cause of the accident, plaintiff was also negligent and it contributed to the accident to the extent of ten per cent and that the total amount of damages due plaintiff without reduction for contributory negligence was $68,000.00.
Thereafter, judgment was rendered in favor of the plaintiff and against the defendant for $61,200.00, together with court costs and interest from date of judicial demand.
The defendant has appealed suspensively, contending that the plaintiff failed to sustain the burden of proof to establish either neglect or unseaworthiness on its part, that the accident was caused by plaintiff's own negligence at least to the extent of fifty per cent, that the amount of the damages was excessive and that interest should have been allowed only from the date of the judgment rather than from judicial demand.
In cases of this type our method of review of the jury verdict must necessarily be the same as that of the federal courts. In Presley v. Upper Mississippi Towing Corporation, 141 So.2d 411 (La.App. 1 Cir., 1962) the court said:
"The rule obtaining in this state in accordance with Article 7, § 29 of the Louisiana Constitution of 1921, LSA, is that the Appellate Courts of Louisiana may hear appeals on both facts and law and may reverse a lower court on a finding of fact when such factual determination is deemed erroneous. Such rule, however, does not apply to a claim under the Jones Act tried in the courts of this State. In Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, in reversing the decision of the Supreme Court of Missouri which set aside an award in a FELA case on the ground that plaintiff's proof did not establish defendant's liability, the Supreme Court of the United States held that under the circumstances the judicial right of review of facts is restricted to *645 the single inquiry of whether, within reason, the evidence adduced supports the conclusion that the negligence of the employer played any part at all in the injury or death of the employee. In cases under the Jones Act appellate courts can and should reverse the judgment of a trial court in the event of erroneous rulings by the lower tribunal on questions of law such as erroneous instruction to the jury regarding the rules and law applicable in such cases unless it affirmatively appears from the record as a whole that such errors were harmless. Fillipon v. Albion Vein Slate Co., 250 U.S. 76, 39 S.Ct. 435, 63 L.Ed. 853, and United States v. River Rouge Imp. Co., 269 U.S. 411, 46 S.Ct. 144, 70 L.Ed. 339; Majestic v. Louisville & N. R. Co., 6 Cir., 147 F.2d 621.
"The measure of quantum adopted and established by the Federal courts in cases arising under the Jones Act (which criteria is binding upon state courts hearing such cases) has on numerous occasions been stated and made clear. * * *" (Page 414).
According to the Supreme Court of the United States in Atlantic & Gulf Stevedores, Inc. v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798, a maritime case involving negligence and unseaworthiness:
"We might agree with the Court of Appeals had the questions of fact been left to us. But neither we nor the Court of Appeals can redetermine facts found by the jury any more than the District Court can predetermine them. For the Seventh Amendment says that `no fact tried by a jury, shall be otherwise reexamined in any Court of the United States, than according to the rules of the common law.'" (82 S.Ct. 783).
And in Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916, a Federal Employers' Liability Act case, the court said:
"It is no answer to say that the jury's verdict involved speculation and conjecture. Whenever facts are in dispute or the evidence is such that fair-minded men may draw different inferences, a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference. Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." (66 S. Ct. 744).
We have reviewed this record carefully and are unable to say there is no evidentiary basis for the jury's findings on any of the issues submitted to it.
Regardless of our own conclusions were we the fact-finding body, the jury was certainly warranted in concluding that the defendant was negligent in failing to provide a safe place to work from the evidence that pipe connections and accessories were very probably located near the path that plaintiff had to follow in rolling the extremely heavy housing to the drawworks shaft and his testimony that the injuries might have been avoided had he not tripped over same.
With respect to the jury finding of unseaworthiness, a shipowner is obliged to provide an adequate crew to operate the vessel and also an adequate number of men to perform each task thereon. Moschi v. S/S Edgar F. Luckenback, D.C., 295 F. Supp. 849, and authorities cited in footnote 22 thereof. Although the preponderance of testimony on the subject appears to be to the contrary, we are unable to say that reasonable men could not differ on the question of whether or not this extremely heavy *646 housing could have been handled safely by more than two men.
Accepting the jury's findings in these respects, the defendant's negligence clearly played a part in this employee's injury and its breach of warranty of seaworthiness was a proximate cause thereof.
The assessment of damages under the doctrine of comparative fault is indeed a difficult task, and a jury's finding in this regard is seldom interfered with by the federal appellate courts. Although we are inclined to believe that in this case the plaintiff's negligence contributed more than ten per cent in causing the accident, here again we are unable to say that fair-minded men might not differ on this question under the evidence presented.
With regard to the defendant's contention that the verdict of the jury was excessive, in Massachusetts Bonding and Insurance Co. v. Abbott, 287 F.2d 547, the Fifth Circuit Court of Appeals said:
"As to the question of excessiveness of the verdict, on which the appellant mainly relies, it is settled law, not only in this jurisdiction but generally elsewhere, that where the amount of a verdict is not excessive in law, that is, is not so gross as to shock the conscience of the court, excessiveness in fact will furnish no ground for relief. * * *" (Page 548).
Although we note that the assessment of plaintiff's damages is considerably greater than the amounts usually awarded by the courts of Louisiana in similar cases see Courville v. B & B Engineering and Supply Company, 230 So.2d 377 (La.App. 1 Cir. 1970)we are unable to say it is "so gross as to shock the conscience of the court" in view of the testimony of Dr. Un-Kauf that a fusion of plaintiff's knee may be required by the time he is fifty years of age.
The jury's finding that plaintiff was a seaman was not disputed by defendant.
Having concluded that there is an evidentiary basis for each of the jury's findings, we are obliged to affirm the judgment based thereon.
The award of interest on the judgment from judicial demand rather than from date of its entry is a matter vested within the sound discretion of the trial judge in maritime cases. Canova v. Travelers Insurance Company, 5 Cir., 406 F.2d 410. There being no showing of clear abuse of such discretion, we will not disturb the lower court's decision in this respect.
For the foregoing reasons, the judgment of the lower court is affirmed at appellant's cost.
Affirmed.