246 So.2d 280 (1971)
Mrs. Myrtle TRAHAN et al., Plaintiffs and Appellees,
v.
GULF CREWS, INC., et al., Defendants and Appellants.
No. 3295.
Court of Appeal of Louisiana, Third Circuit.
March 10, 1971.
Rehearings Denied April 22, 1971.
*282 Hinds & Meyers, by John K. Meyers, Houston, Tex., Faris, Ellis, Cutrone, Gilmore, Lautenschlaeger, by Joy S. Miller, New Orleans, La., Hall, Raggio, Farrar & Barnett, by Edgar F. Barnett, Lake Charles, La., for defendants-appellants.
Jones & Jones, by J. B. Jones, Jr., Cameron, La., for plaintiffs-appellees.
Before FRUGE, CULPEPPER and MILLER, JJ.
CULPEPPER, Judge.
This is a suit under the Jones Act, 46 U.S.C.A. Section 688, for the wrongful death of a seaman. Plaintiffs are the surviving wife and children of Howard J. Trahan, Sr., who drowned during the course and scope of his employment by defendant, Gulf Crews, Inc. A jury, in a general verdict, awarded plaintiffs a total of $168,125. Defendants appealed.
The principal issues relate to the negligence of the defendant employer and the quantum of the awards.
The deceased, Mr. Trahan, was the master of the M/V Don, an 85-foot boat used *283 to service offshore oil rigs. Other crew members were Cyril Darbonne, the engineer, and Wesley LeBouef, a deckhand. The boat was being used to fulfill a contract to service wells of Shell Oil Company about 60 miles offshore from Morgan City, Louisiana. The crew's duty was seven days and nights at sea, and seven days and nights on shore, off duty. During the day, they went from platform to platform to service the Shell Oil Company operations. At night they returned to Platform B to stand by. Platform B stood some 60 feet above the water with a boat landing deck about 10 feet above the water.
At approximately 6:00 p. m. on March 24, 1969, Captain Trahan and his crew secured the M/V Don to Platform B by two mooring lines and went to the living quarters on the platform where they ate dinner and watched television. During the time they were aboard Platform B, the weather gradually worsened. The wind reached gale force, with seas running 12 to 14 feet, and the M/V Don broke its mooring line and began to drift away. Captain Trahan was making his way down toward the boat landing, as he had done several times earlier that evening to check on the boat, when he saw that the mooring line had broken. He rushed to the platform landing. He took off his hat, coat and shoes and told LeBouef, his deckhand, to "get a life ring". Then Trahan jumped, either in an attempt to board the boat or to dive in the water and swim to the drifting boat. LeBouef, in the meantime, fumbled with the life ring, which was attached to the railing by means of a bracket at the level 10 feet above the water. Darbonne also went over to help LeBouef get it loose. Finally, LeBouef secured the life ring and, with it in his hand, ran to the railing edge. At that moment Trahan was in the water near or back of a piling approximately 25 feet away. Neither LeBouef nor Darbonne ever threw out the life line. Captain Trahan disappeared into the sea. He was last seen swimming toward the M/V Don. His body was never recovered.
At the outset, we recognize that LSA-La.Const. Art. VII, Sec. 29, which gives appellate courts of Louisiana the right to review both facts and law, is not applicable to cases tried under federal statutes such as the Jones Act. The scope of our appellate review in this case is the same as that of the Federal Courts, Ferdinandtsen v. Delta Marine Drilling Co., La.App., 235 So.2d 641 (4th Cir. 1970); Presley v. Upper Mississippi Towing Corp., 141 So.2d 411 (La.App. 1st Cir. 1961). In Rogers v. Missouri Pacific Railway Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493, the United States Supreme Court stated this scope of review as follows:
"It is no answer to say the jury's verdict involved speculation or conjecture * * Only where there is a complete absence of probative facts to support the conclusion reached does a reversible error appear * * * the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable." (emphasis added). Lavender v. Kurn, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916.
Negligence under the Jones Act includes the owner's failure to provide reasonably safe equipment and a competent crew. It is plaintiff's position that Gulf Crews failed in one or both of these duties which resulted in the death of Captain Trahan. As to unsafe equipment, evidence was adduced by plaintiff to show that the lines in use on the M/V Don were of inadequate size and were in defective condition. Cyril Darbonne testified that one of the lines in use on the ship was a 1½" line which had been spliced with a 2" line. He further testified that when the M/V Don was tied up on the evening in question that the lines were badly chafed in some places and that the other crew which manned the DON while Captain Trahan and his crew were on their days off had a habit of retying the mooring lines when they broke instead of splicing them.
*284 Despite the fact that the M/V Don was recovered along with part of the broken mooring lines, the lines were never produced at trial. However, the president of Gulf Crews testified that Captain Trahan got everything he wanted from the company and if inadequate lines were being used, it was the fault of Captain Trahan and not of Gulf Crews, Inc.
Plaintiff's contention that the crew was incompetent is based on their failure to satisfy the duty of rescue. After Captain Trahan jumped, LeBouef, with assistance from Darbonne, removed the life ring from a bracket on the platform and moved to a position on the platform which was about 25 feet from where Captain Trahan was in the water. LeBouef testified that he did not throw the life ring at that time because he was left-handed and a large piling was between him and Captain Trahan and he could not throw the ring to Trahan. Whatever the excuse or reason for the failure to throw the life ring, one fact remains. No life ring was ever thrown.
Numerous cases have considered the duty of the crew to rescue a fellow seaman who, accidentally or through his own carelessness, finds himself overboard and in danger of drowning. In Macomber v. De Bardeleben Coal Co., 200 La. 633, 8 So.2d 624 (1942) a deck hand failed to throw a life preserver to a seaman who fell overboard. The court, in affirming a jury award under the Jones Act, said:
"The duty to rescue a seaman overboard is a duty of the ship and of the owner under the general maritime law of the sea.' The G. W. Glenn, supra, [4 F.Supp. 727, 729]. See, also, United States v. Knowles, D.C., Fed.Cas.No. 15,540, 4 Sawy. 517. `There is little doubt that rescue is a duty when a sailor falls into the sea.' Cortes v. Baltimore Insular Line, Inc., supra [Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S.Ct. 173, 77 L.Ed. 368]. `Equally clear is the obligation upon the part of the ship to save the life of a sailor who falls overboard through a misadventure, not uncommon in his dangerous calling. * * * it is implied in the contract that the ship shall use every reasonable means to save the life of a human being who has no other source of help. The universal custom of the sea demands as much wherever human life is in danger. The seaman's contract of employment requires it as a matter of right.' Harris v. Pennsylvania Railroad Co., supra, [50 F.2d 866, 868]. See, also, Salla v. Hellman, D.C., 7 F.2d 953.
"(2, 3) In the Harris case the United States Circuit Court of Appeal for the Fourth Circuit said: `* * * we have no doubt that a legal obligation rests upon a ship to use due diligence to save one of the crew, who, by his own neglect, falls into the sea; and that the owners are liable if, by failure to perform this duty, his life is lost.'"
In Harris v. Pennsylvania, supra, a man on deck threw a six inch rope towards a fellow crew member who had fallen overboard. He failed to use a heaving line nearby and made no attempt to throw in a life ring although he was in close proximity thereto. The court concluded that this constituted evidence of neglect on the part of the crew and it would be for the jury to decide whether the man could have been saved if due diligence had been used.
The Third Circuit considered the rescue doctrine in Kirincich v. Standard Dredging Co., 112 F.2d 163 (1940) and held that where it appeared that a crewman fell overboard from a barge and deck hands threw heaving lines one inch in diameter in his direction, and one line came within two feet of the spot where he was struggling in the water, but life preservers were not thrown, the owner of the barge was liable for the death of the deck hand. In Kirincich, the court went so far as to quote from the seascout manual the following language to indicate how basic to seamanship is the proper rescue procedure when a man has fallen overboard.

*285 "It is the duty of the man nearest the life bouy to instantly toss it overboard * * *" Kirincich, supra, p. 166.
In Tompkins v. Pilots Association, D.C., 32 F.Supp. 439 (1940) two life rings were thrown from the bridge to a man who had fallen into the water. It was night, and the search light was turned on the man in the water, and he was in full sight of those on board. Luminous life rings, intended for use at night, were also easily available on the ship. They were not used. The sailor drowned without ever making any attempt to reach the two ordinary life preservers which had been thrown. Failure to use the luminous life rings was held to constitute negligence on the part of the crew, and a failure in their duty to rescue the fellow crewman, and the employer was held liable for its failure to provide a competent crew.
Coast Guard recommendations on rescue state:
"Throw a ring buoy overboard as close to the person as possible." (Tr. 108).
We conclude that LeBouef was negligent. His duty was to throw the life preserver as close as possible to where Captain Trahan was, to give him an opportunity to swim and reach it. LeBouef was not required to hit the captain with the ring. But his failure to throw it was a breach of one of the most basic duties of a seaman.
The jury in this case returned a general verdict. For this reason, we do not know upon what finding of negligence the jury based its holding of liability. There is sufficient evidence in the record, however, including the testimony of all witnesses, from which the jury could have concluded that Gulf Crews, Inc. negligently failed to provide a competent crew or negligently failed in its duty to provide safe equipment.
Defendant argues that Captain Trahan did not jump in an attempt to land on the drifting boat, but rather dove into the water in a futile and foolish effort to swim to the ship which was drifting away and to save the ship and his own job. It is contended that this amounted to assumption of risk and contributory negligence on the part of Captain Trahan. Defendants say the jury should have found this contributory negligence mitigates the damages.
Under the Jones Act, contributory negligence is not a bar, but as a general rule may be used in mitigation of damages. However, rescue cases are an exception. In Macomber v. De Bardeleben Coal Co., supra, our Supreme Court held that contributory negligence is not a defense to the duty of rescue and is immaterial in such cases, citing Kirincich v. Standard Dredging Co., 112 F.2d 163, 164 (1940) and Harris v. Pennsylvania Railroad Co., 4th Cir., 50 F.2d 866, 868. Hence, any contributory negligence by Trahan does not bar recovery nor mitigate damages.
Appellant contends the trial court committed several errors in charging the jury. The principal objection to the charge of 13 written pages is one sentence which reads as follows:
"Under the Jones Act, if the employer committed some act or omission that played any part, however small, in actually bringing about or causing the death of Howard Joseph Trahan, Sr., then you should find the employer was negligent." (Tr. 130).
Appellant argues the sentence should have been worded to say: "some negligent act or omission". It contends that by omitting the word "negligent" from this sentence, the court left the jury free to find liability without negligence. We do not agree.
To lift one sentence out of context from a charge as lengthy as this is not sufficient to show error. We must consider the charge as a whole.
"* * * a reviewing court should not pick out one erroneous paragraph of a *286 long charge and reverse upon it, if, upon consideration of the entire charge, it appears that the jurors were correctly instructed as to the applicable law in such manner as to leave no confusion in their minds." Tyree v. New York Central R. F. Co. (1967) [6 Cir.,] 382 F.2d 524.
The general rule is stated in 53 Am.Jur., Sec. 842:
"In considering the correctness and adequacy in a charge to the jury, it should be taken as a whole and read in its entirety: That is, each instruction must be considered in connection with others of the series, referring to the same subject and connected therewith, and if, when taken together, they properly express the law as applicable to the particular case, there is no just ground of complaint, even though an isolated and detached clause is in itself inaccurate, ambiguous, incomplete, or otherwise subject to criticism."
The charge given by the trial judge, when taken as a whole, makes it clear that in order to recover under the Jones Act, plaintiffs must prove the employer was negligent.
Appellant urges that the trial judge erred in refusing to charge the jury on sudden emergency as respects Wesley LeBouef's actions. They cite no cases which support this proposition. The doctrine of sudden emergency is inimical to the duty of rescue and cannot be applied in conjunction with that doctrine. In Macomber v. De Bardeleben Coal Co., Inc., supra, a case having similar facts, our Supreme Court defines the law and duty as to rescue and rejects the use of a sudden emergency doctrine in the following language:
"The law does not leave any discretion to the officers and crew of a boat in cases of such emergency. It was Edgecombe's duty upon seeing Macomber fall overboard to immediately toss or throw him a life ring. His failure to do so constituted negligence under the Jones Act, and the jurisprudence of the Federal Court."
Defendants also complain of the trial judge's refusal to charge the jury that the decedent's status as master of the boat makes him contributorily negligent for any worn condition of the mooring lines or deficient training of the crew in the rules of rescue. As we have already held above, contributory negligence is no defense in rescue cases.
The defendant insurer argues that LSA-R.S. 22:655, Louisiana's Direct Action Statute, is not applicable since the accident occurred outside the territorial waters of the State of Louisiana. We do not agree. LSA-R.S. 22:655 allows a direct action to be brought against an insurer if the accident involved occurred in Louisiana, or if the policy in question was written or delivered in Louisiana. The policy in this case was delivered to the defendant employer in Louisiana. See Webb v. Zurich Insurance Co., 251 La. 558, 559, 205 So.2d 398 (1957) and Verrett v. Travelers Insurance Co., 216 So.2d 379 (La.App. 3rd Cir. 1968).
Appellants contend that since Mrs. Myrtle Trahan received $5,000 under a group life insurance policy issued by Pan American Insurance Company, and on which defendant, Gulf Crews, paid the premiums, defendants should be given credit against this judgment for the $5,000. The trial judge correctly refused to allow the introduction of evidence to show receipt of the $5,000. To allow an offset of the nature urged by appellant would require that we vitiate contractual obligation. This policy was a separate contractual obligation which has nothing to do with the liability involved in the instant case.
Appellants contend that the case of Gunter v. Lord, 242 La. 943, 140 So.2d 11 (1962) requires the offset which they urge. That case involved the interpretation of a family combination automobile policy and *287 the question of whether or not the plaintiff could collect twice for the same medical bills under the medical payment provision of the policy, and the liability provisions of the same policy. It was held that they could not. The cases, which have since considered the effect of the Gunter case, do not support appellant's contention. In Dowden v. Southern Farm Bureau Casualty Insurance Co., 158 So.2d 399 (La.App. 3rd Cir. 1963), the following statement is found:
"We are convinced that the sole holding of the Supreme Court in Gunter v. Lord is, as stated by us, in Pitre v. State Farm Mutual Insurance Company, La.App. 3rd Cir., 154 So.2d 772, 774, that `where injured automobile passengers had been paid their medical expenses under medical payments provisions of automobile policies, they could not be awarded the same medical expenses in a court action brought directly against the insurer'."
Sonnier v. State Farm Mutual Automobile Insurance Company, 179 So.2d 467 (La.App. 3rd Cir. 1965) involved a situation where one insurance company insured both automobiles in the collision, and had previously paid medical bills under the medical pay provisions of the plaintiff's policy, and was attempting to prevent plaintiff from collecting these same medical bills against the liability policy issued by the insurance company on the other vehicle involved in the accident. In rejecting the defendant's contention, this court stated:
"The conclusion which defendant insurer asks us to reach in this case would have very far reaching effects. It would fly in the teeth of the established jurisprudence cited in the above quotation from Gunter v. Lord. It would mean that if the liability insurer, by coincidence, happen to also be the insurer under a life insurance policy, disability policy, property damage policy, or hospital and medical expense policy, etc., under which it was contractually obligated to pay any portion of the tort liability, then credit would be allowed. We do not think any such result was intended in Gunter v. Lord."
Thus, the group life insurance policy purchased by the employer created certain contractual obligations unrelated to the tort liability that is questioned in the instant case, and the offset was properly refused.
The final issue is the quantum of the awards. The jury verdict was as follows:

To Mrs. Myrtle Trahan, widow
of the deceased $107,625.00;
To Delores Ruth Trahan, 15
year old daughter of the
decedent 45,500.00;
To Mrs. Beverly Trahan Ogea,
divorced daughter of the
decedent 5,000.00;
To Robert Lee Trahan, 27
year old son of the
decedent 5,000.00;
and to Howard J. Trahan, Jr.,
29 year old son of the
decedent 5,000.00
 TOTAL $168,125.00

In Daughdrill v. Diamond "M" Drilling Co., 305 F.Supp. 836 (W.D.La.1969) the decedent was 42.5 years of age and earned $9,972 in 1966, $6,827 in 1965 and $4,408 in 1964. He left a widow and four minor children, ranging in age from 6 to 17 years. The court held as follows:
"Under the Jones Act the lawful elements of plaintiff's claim are:
"a. The loss of support that the widow and children have suffered and will suffer by reason of the death of Enis Daughdrill;
"b. The loss of prospective inheritance to the window and children; and
"c. Loss to the decedent's children, individually, of the value of the decedent's `nurture' during their respective minorities. (Orona v.

*288 Isbrandtsen, 204 F.Supp. 777 (S.D. N.Y., 1962); So. Pacific [Co.] v. Heavingham, 236 F.2d 406 (9th Cir., 1956); Martin v. Atlantic Coast Line R. Co., 268 F.2d 397 (5th Cir., 1959); Pet. of Marina Mercante (Niagaraguense, SA), 248 F.Supp. 15 (S.D. N.Y., 1965); and Spann v. So. Ry. Co., etc., C.A. 11023 (E.D.La., 1962), unpublished.
"(13) These items of damage cannot be computed by any mathematical formulae nor derived from precise principles susceptible of being programmed into a computer. There is little about the way this court might compute damage that each side can not with sincerity and precedent assail as being erroneous. Some courts use work expectancy, others life. Some discount at four (4%) percent, others as high as 6½%. Some use average earnings for the last three years, others only the last year's earnings. What percentage of the gross earnings would constitute a pecuniary loss to the widow and children? The answer is probably different in each case. Summarizing, the parties are entitled to the independent judgment of the individual judge in each case. We fix the damage as follows:
"(1) Loss of contribution to wife and children:

 To date $15,000.00
 Future 86,700.00

"(2) Funeral Expenses 1,459.20
"(3) Loss of nurture and guidance:

 Sharolyn 1,750.00
 Ronda 3,125.00
 Shay 5,375.00
 Kathy 7,125.00
 ________
 TOTAL $120,534.20"

In Petition of Marina Mercante Nicaraguense, SA, 248 F.Supp. 15 (D.C.N.Y., 1965), the court gave the following guidelines:
"The guiding considerations in determining damages are a decedent's earning capacity and what sum under all the circumstances he might reasonably have been expected to earn had he lived, and the extent to which the surviving dependents `might logically and reasonably have been expected to share in it.' In determining the reasonable expectation of pecuniary assistance or support of which the beneficiaries have been deprived, proper adjustment should be made for taxes, personal expenses of the decedent and his share of the household expenses. Also to be considered are decedent's actual earnings at the time of death, his work habits and his prospects for advancement.
"The Court finds that the amounts of contribution and the ensuing damages sustained by the beneficiaries of the deceased vary according to the number of children who are minors at given periods. In the instance of five children and a wife, the amount of contribution of which they have been deprived can reasonably be fixed at 831/3%; four children, at 80%; three or two children, at 75%; one child, at 66 2/3%; and where the wife is the sole beneficiary, at 50%." (emphasis supplied)
The joint income tax returns of Captain and Mrs. Trahan show that during the five years preceding his death, he earned an average of $6,032 per year after taxes. During 1968, the year before his death, his income was $6,394 (rounded to $6,400) after taxes.
Mrs. Trahan testified that the captain had another job from which he earned $100 every other week (the weeks he was not working off-shore) and that he paid no taxes whatever on this income.
Giving plaintiffs every benefit of the doubt under the above figures, Captain Trahan's expected income could not be estimated at more than $9,000 per year. He was 48 years of age at the time of his *289 death and had no more than 17 years of life work expectancy until he reached the age of 65.
Of course, some amount must be deducted for the personal expenses of the decedent and his share of the household expenses. Normally, in a family consisting of a man and his wife and one minor child, one-third of the family expense is attributable to the husband. However, plaintiffs in this case say that since Captain Trahan spent 50% of his time off-shore, less was used for his own personal needs. Giving plaintiffs every benefit of the doubt, we estimate that only 20%, i. e., $1,800, of decedent's earnings would have been used for his personal needs each year. This means that $7,200 remains for the family each year.
In cases of this type the total pecuniary loss must be discounted by the amount which the plaintiffs could expect if they received that sum now and invested it. As stated in the Daughdrill case, supra, various courts have allowed 4% to 6½%. Such an adjustment would reduce the total yearly pecuniary loss to less than $7,200.
The jury awarded $45,500 to Delores Ruth Trahan. She was 15 years of age at the time of the death of her father. There is no evidence to show that she had any reason to expect pecuniary support from him beyond the age of 21. Of course, in addition to pecuniary loss, minors are entitled to an award for the value of nurture and guidance, but such awards are no more than about $600 per year. See the Daughdrill case, supra, and authorities cited therein. If we calculate loss of nurture and guidance at $600 per year for 6 years, a total of $3,600, and subtract this from the total award to Delores in the sum of $45,500, this leaves $41,900 as the award for loss of support. This would mean that Delores was awarded $6,983 per year out of a total available for the support of the family of less than $7,200 per year. It is obvious that the award to Delores is grossly excessive.
But the most unreasonable portion of this award is that to the two adult sons, Robert Lee Trahan, age 27, and Howard J. Trahan, Jr., age 29. There is no evidence whatever that these two sons had any grounds for expecting pecuniary benefit from a continuance of the decedent's life. The awards to these two major children cannot be allowed to stand.
We will not attempt to review the awards to the wife and the divorced daughter. It is already apparent that, because of the grossly excessive awards to the minor daughter and the two major sons, the case must be remanded for a new trial limited to the issue of quantum.
Plaintiffs argue that even if the awards cannot be justified under the Jones Act, they must be affirmed under the recent case of Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339. Moragne is a landmark decision overruling previous jurisprudence and recognizing for the first time a wrongful death action under admiralty law. However, in Moragne the U. S. Supreme Court did not decide the measure of damages to be used in such cases, leaving this for later jurisprudential development through the lower courts. In Grisby v. Coastal Marine Service, (5th Cir. 1969) 412 F.2d 1011, the court held in a Louisiana case, falling within the Moragne doctrine, that the measure of damages applicable under the Louisiana civil law applies. This opens the door to awards for loss of love, affection, etc. Hence, plaintiff's argument is that under Moragne the jury could have made an award for loss of love and affection.
The answer to plaintiff's argument under Moragne is that this case was expressly pleaded and tried as a Jones Act case. On questions of both liability and measure of damages, the jury was charged only as to the law applicable to the Jones Act cases.
The scope of our appellate review in this case is the same as that applied by federal courts in similar matters. Hence, we cannot change the finding of fact of *290 the jury as to the quantum of the awards. We must remand the case for a new trial. See Presley v. Upper Mississippi Towing Corp., La.App., 141 So.2d 411 (1st Cir. 1961, writ of certiorari denied), Atlantic & Gulf Stevadores, Inc. v. Ellerman Lines, 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 and Ferdinandtsen v. Delta Marine Drilling Co., La.App., 235 So.2d 641 (4th Cir. 1970). However, the issue of negligence has been fully litigated. Furthermore, for the reasons stated above, any contributory negligence on the part of the decedent cannot be urged as a defense in this case which involves the duty of rescue. No useful purpose would be served by a re-trial of these issues. Under the circumstances, we will restrict the remand of this case to the question of damages only. See Presley v. Upper Mississippi Towing Corp., supra, where a similar procedure was used.
For the reasons assigned, the judgment of the district court is affirmed insofar as it decrees liability on the part of the defendants. The judgment is reversed and set aside with respect to the awards of damages in favor of all plaintiffs. This case is remanded to the district court for re-trial of the issue of damages only, consistent with law and the views expressed herein. The costs of this appeal are assessed to plaintiffs and defendants in the proportion of one-half to each side. Assessment of costs in the district court must await a final determination of the case.
Affirmed in part, reversed in part and remanded.
FRUGE, Judge (concurring).
I completely concur in this opinion on all points, even though I do so with certain reservations concerning the award.
I fully agree that the remedy is to remand, if this court feels that the award is excessive. However, I do not believe the award in this case is excessive, but in view of the fact that a jury can assess the quantum at the trial level, I concur in the remand.